Mr. Becker, how much time would you like to reserve, if at all? I'd like to reserve two minutes, Your Honor. Two minutes, very good. You may proceed whenever you're ready. All right. Good morning, Your Honor, and may it please the Court. I'm David Becker for Appellants. With me at Council's table are Mack Lacy and Dan Mencher. I want to focus on three ways in which the analysis of Clean Water Act Section 401 and S.D. Warren cannot be reconciled with the reasoning in Dombeck. Can I just further limit this? Are we really focusing on this point? If, arguing, this Court were to conclude that Dombeck still controls, is it accurate to say that the issue of collateral estoppel and virtual representation essentially become moot? Your Honor, this Court still would have to reverse the district court's decision because it is a fundamental error in law to evaluate, with respect to the new parties to this case, the issue of collateral estoppel on the basis that the district court did. This Court's decision in the Headwaters case and the Supreme Court's decision in Taylor v. Sturgill make it clear that you need to have a factual record to make a determination of privity or a determination that a proxy situation exists. But it wouldn't make a difference anymore, would it? I think that's Judge Smith's point. And what difference would it make? At a minute, it's still necessary to vacate the ruling because if the — even though the — Well, why would you vacate if there's another basis on which to support it? Because there's still a fundamental error that would be out there. If this Court was simply to affirm this decision in toto without specifically addressing the error of the district court in failing to make a factual record under Taylor and under Headwaters, it would leave out there that part of the decision intact, and it would be very prejudicial to other parties that are in a similar situation where the Headwaters case makes it very clear that there is no public right exception to the due process right of getting into court and having your arguments heard. And it is — it was improper for the district court not to make a factual record. Taylor makes that clear with respect to proxies, and the virtual representation doctrine that the district court entirely relied on with respect to the new parties has now been swept away. So for those parties to be precluded from bringing this argument, the district court still needed to make a factual record, and they did not do so. Okay. I guess I hear what you're saying. I understand your point about the virtual representation in particular. But let's just say arguendo that the virtual representation is out the window. You've got these new parties involved. But if, arguendo, Dombeck is still the law, then it's still the law. And the facts that were pled in this case applied equally, did they not, to the previously litigating parties as to the virtually represented parties, in quotes. Under the circumstances the district court had before it, the allegations considered, the district court concluded that Dombeck was still the law and that the judgment belonged to the Forest Service. If Dombeck is still the law, and I know you're going to argue that it's not, and I'm not saying one way or another about our view on it, but if that were true, why wouldn't the parties that were, in quotes, virtually represented under the former doctrine, why would they not have had their full opportunity to make their presentation to the district court and they would be nonetheless, in effect, bound by Dombeck, just like anybody else, some new party just coming along who was not involved in any way. If Dombeck's the law, then Dombeck's the law. Then it would have been proper to dismiss on the merits, but not at the pleading stage as a matter of collateral estoppel. So even if Dombeck controls, the dismissal on estoppel of the new parties was error. Those parties would still have their opportunity to come into court, make their argument, but the aspect of the district court's decision that was wrong was to not make a factual record and yet dismiss those new parties on collateral estoppel grounds. But in any event, for all of the parties here, collateral estoppel doesn't apply because the analysis in S.D. Warren cannot be reconciled with the reasoning in Dombeck. Fundamentally, the fundamental discrepancy is that the Dombeck court did not consider the ordinary and natural meaning of the term discharge. Well, before you get to that, I read your fine brief with great interest, but the point that seems to me that there seems to be a complete disconnect between point sources and non-point sources. Isn't that really the gravamen of the whole thing, not the meaning of the word discharge? No, Your Honor, because S.D. Warren starts from the standpoint of looking at whether a particular release of pollution comes within that plain meaning of discharge as a flow over issuing out. But it involved a dam, a point source. But dams are not necessarily point sources, Your Honor. This one was. There was no evaluation of that in S.D. Warren. S.D. Warren did not address the issue of whether or not there was a point source. It doesn't use the term point source. But don't we have to look at the facts as pled in S.D. Warren? And the facts in S.D. Warren, at least as I recall, dealt with a dam. You know, it was located. It was fixed. It had pipes and so on where the effluent was coming out. Isn't that correct? That is correct, Your Honor. By the standards that the Supreme Court and our jurisprudence have set, it would constitute, even though the Court may have not discussed it, it would constitute a point source, isn't that correct? No, Your Honor, that is not true. Okay. Help me on this. The Supreme Court has never addressed the question of whether dams are or are not point sources. And three circuit courts, the Sixth Circuit in Consumers Power, the Eighth Circuit in Missouri X. Rel. Ashcroft v. Department of the Army, and the D.C. Circuit in Gorsuch have all held that dams are sources of non-point pollution. But that's when they're under construction. No, that's even when they're having pollution issue out of them. What case can you cite to me from any circuit where a dam has been completed, it is done, and the Court has found it to be a non-point source? The TVA v. Tennessee Water Quality Board, for example. TVA v. Tennessee Water Quality Board. It's at 717F2992. And that is cited, and there's a collection of cases in the Consumers Power case that we cite in our brief that describe these various distinctions. And they all fall back on Section 304F2F of the Clean Water Act, where the changes in water quality from dams are specifically included under the category of non-point sources. And S.D. Warren didn't evaluate one way or the other whether or not that particular dam was a point source. It simply was irrelevant, even though the petitioner in that case had suggested that the changes that it was causing to the chemistry of the water from its operations should be characterized as non-point source discharges. So the plain meaning and the expansive meaning of discharge in S.D. Warren did not go to whether or not what the source of the pollution was, but rather the characteristic of the release as a flowing or an issuing out. So your point, I gather, is that it doesn't really matter whether a discharge comes from a point or a non-point source as long as it meets the description the Supreme Court gave in S.D. Warren. Is that right? That's right. And that's also underscored by the purpose of Section 401 that S.D. Warren discerned and that Dombek did not discuss, which is that Section 401 is meant to preserve States' authority to reach the broad range of pollution and which is not limited in any way to point or non-point sources. The Clean Water Act assigns the primary responsibility for control of non-point sources to the States, and Section 401, as the conclusion in S.D. Warren discusses, preserves for the States that authority to evaluate federally permitted activities of any sort and to place conditions on them to ensure that they meet water quality standards. And this points out, again, the discussion in S.D. Warren at the end, the discrepancy that the Dombek court did not look to the legislative history in 1970 when the term discharge and the State water quality certification requirement were added into the statutory structure. Looking at that legislative history from the Water Quality Control Act of 1970, it's evident from the House report that it was meant to broadly reach any activity of any kind. At the time that the term discharge was added, there was no distinction between point sources. You're saying that the term discharge, as the Supreme Court understood it in S.D. Warren, is different than when the point and non-point source concept was put into the law. That's correct, Your Honor. You have to go back to the original intent of Congress in 1970 to reach all activities of any kind or nature. As one of the sponsors, Senator Cooper, said, there were no exceptions for federally That came in in 1972 when Congress added the term discharge of a pollutant, which refers to point sources, to other sections of the Act and controls over point source pollution in other sections of the Act, and yet left the term discharge unqualified, exactly the same in Section 401. If you're correct, doesn't it render the whole concept of point and non-point sources irrelevant? No, Your Honor. It simply means that the state certification provision Right. I understand that the state would get into it, but the bottom line is the state doesn't get into the, at least under DOMBEC, it doesn't get into it because they're saying that it's not subject to state supervision. Do you agree with that? That's what DOMBEC said. I agree with that. Right. Exactly. Right. But I think the broader point is that under the purpose of Section 401, as S.D. Warren discerns it, it's meant to reach all forms of pollution, not simply So it does. It does. I'm hoping you'll make it clear here. It does mean if we adopt your construction, as you understand S.D. Warren, it would render the difference between point and non-point sources irrelevant. Isn't that a fair statement? For the purpose of state certification, it would mean that pollution from any activity that could result in a release of pollution Right. From point or non-point sources. Point or non-point sources would have to go through the state certification process. The relevant provisions for non-point sources would only be those in Section 303 that's cross-referenced in Section 401. And I gather you would agree that would be a significant expansion of the law as currently understood. DOMBEC is the only court that's ever addressed this, and it would be a significant difference, but not an expansion from the original intent of Congress when they subject to a federal permit without exception. Again, because it preserves the state's right to check, to place a check on the federally permitted activities, because it's the states ultimately that have primary responsibility under the Clean Water Act for controlling all pollution, and they're the states are the only ones who have any responsibility under the Clean Water Act for controlling non-point source pollution. Now, before you sit down, because you want to save some time for me, well, I know, just tell me very directly and very briefly why this, you know, your analysis as you've gone through with Judge Smith, why that necessarily results in the overruling of DOMBEC? Because DOMBEC did not evaluate the fundamental question of whether or not livestock grazing's water pollution comes within the ordinary and natural meaning of the term discharge. So this Court needs to make that evaluation, look at the 1970 legislative history that DOMBEC did not look at, and also address the fact that the S.D. Warren Court says that different sections of the Act cannot be interchanged with each other, which DOMBEC did in undertaking its analysis. And once that analysis is applied, the S.D. Warren mode of analyzing the question of whether releases from livestock pollution fit the meaning of discharge, the natural result is that DOMBEC needs to be overruled. I'd like to move to the next one. Yeah. Well, because Judge Lasheem asked you the question, we'll give you your full two minutes, okay? We'll now hear from the government. Good morning. May it please the Court. I'm Lisa Jones from the Department of Justice for the United States. First, I'd like to go to Judge Smith, your question about whether you could affirm the district court or not. We believe that if you read S.D. Warren the way we do and find that it's not clearly irreconcilable with this Court's decision in DOMBEC, that, in fact, you can affirm the district court. We think the simplest way that you could do that is to affirm on the basis of stare decisis and just follow your precedent. Right. That was really my point. If DOMBEC were to remain the law, then it's stare decisis in this circuit. That's right. And whoever the plaintiffs are, they're bound by that law. And that's exactly what Justice Ginsburg, writing for the Court in Taylor v. Sergel, said. She thought that most cases governed by the prior doctrine of virtual representation should easily be dealt with by stare decisis. Okay. That would be the simplest way to go. In that case, you have to tell me why S.D. Warren doesn't necessarily require us to overrule DOMBEC. That's right, and that's what I was going to turn to right now. The Desert Association simply overreads S.D. Warren. S.D. Warren answered an entirely different question, and it did so for two reasons. First of all, it was reviewing a decision of the Supreme Judicial Court of Maine, and in that decision, which is found at 868A210 at page 216, and they do paragraphs in their decision that's paragraph 14, the highest court of Maine found that dams are point sources. And the question for which cert was granted on was not a question of whether dams were point sources or not. Clearly, S.D. Warren, if it had wanted to, could have petitioned for cert on that basis, and it did not. It positioned on two different bases, and the Supreme Court granted on one basis. And the basis on which the Supreme Court granted cert was whether basically its decision in the Miccosukee Tribe case from, I think, the term before, impacted in any way the question of 401 certification. The court had found that water transfers for purposes of the NPDES permitting under 402, it had some discussion there, and that's what S.D. Warren petitioned on. They said, Do you have to rule for us based on your decision in Miccosukee? So that's where the Supreme Court came from in deciding S.D. Warren, and that's very important. And from what you're saying, the court in Maine had already ruled on the point, non-point source issue, had found it was a point source, and the petition for the writ of certiorari was based on an entirely different issue based on the Miccosukee case. That's right. And I can read you the question presented if you'd like to hear the exact question that the court granted. It's not too long. It would be kind of worthwhile. And you can find this where it says they just granted on question one at 546 U.S. 933. And the question one was, quote, Does the mere flow of water through an existing dam constitute a discharge under 401, despite this court's holding in Miccosukee, that a discharge requires the addition of water from a distinct water body? And that's a different issue than Dombek. It's a very different issue than Dombek. I would have a very difficult time writing a brief saying non-point sourced pollution from the runoff of grazing activities requires 401 certification and citing S.D. Warren, and saying see S.D. Warren. I mean, perhaps the plaintiffs in the original Dombek case could have come forward and made the plain language argument, but frankly this court reached the same conclusion that the Supreme Court reached in S.D. Warren without analyzing the 1970 legislative history, which was, and this is at the Dombek decision at 1098, discharge is the broader term because it includes all releases from point sources, whether polluting or non-polluting. So this court had already gotten to that point that you don't need the addition of a pollutant in order to still be a discharge, but for the question presented in Dombek, which was can non-point source pollution trigger 401, the Supreme Court's decision in S.D. Warren did not disturb that. And with respect to the legislative history that opposing counsel cited, to the extent it has any relevance here where we don't believe that the holding of S.D. Warren could in any way be clearly irreconcilable because the cases are not on point, and that's what your cases have looked to, whether there's a legal holding on closely related facts, and here we don't believe that's the truth. I think they're also over-reading that legislative history because the court said, if the legislative history means anything, I mean they were not putting a whole lot of weight in the 1970 legislative history, and really what they looked to was legislative history about thermal discharges, et cetera, and that was really not at issue and on to one. So our position is that S.D. Warren is not clearly irreconcilable and therefore remains good law and that this court should just affirm the district courts. Well, now, you know, there's another, I think our case law recognizes another basis of, you know, we'll say questioning our own authority, and that's where, you know, the Supreme Court's, I think the phrase is mode of analysis indicates that the way we've analyzed the issue is mistaken. Right? Which is an argument you can make with respect to how the Ninth Circuit looked at this, I'll call it agricultural runoff in Dombek, that we attacked it the wrong way. I'm going to respectfully disagree just because I did read all of the cases, including the case that the Miller case, which used the term the mode of analysis. Right. And it was citing to a law review article that Justice Scalia had written, which actually wasn't talking about the stare decisis, but was talking about just kind of basically how great the reach of decisions should be, sort of. But what Miller did was talk about, it used the terms that have been used in your cases back since Justice, now Justice Kennedy wrote Lancelotti, that you have to find something that's clearly irreconcilable. And even in the Miller case that used that term mode of analysis, this court did not look at the mode of analysis per se. It was looking at whether holdings and the explications of the rule of law, meaning the explication of the holding, that could also go back. But here, I don't see how the mode of analysis gets anyone anywhere, because all of the arguments were available to on the one. At the time, I mean, just because someone else made a different language of the dictionary definition, if this Court had, if someone had argued to the original panel, of which you were a part, Judge Tashima, that you should follow the dictionary definition, I imagine that you would have likewise made the same holding that you did at 1098, that discharge is the broader term, because it includes all releases from point sources, whether polluting or non-polluting. You could read the dictionary definition right after that as following from that holding, which is, you don't have to have an addition of a pollutant if you've got a discharge from a point source. But the Supreme Court didn't make any mode of analysis or holding on the question of point source. And that's why we would say that it just is not clearly a reconcilable. And I would just say, if you look through all of the cases, Lancelotti, Galbraith, Ortega-Mendez, Koutros, and Miller, all cited in my opponents' briefs, that what the Court has looked to every time is whether something was clearly irreconcilable on facts that were just about on point or on all fours. Does the government agree that under Taylor, if we ever, if you put aside for a moment the stereo-decisis issue, if we were to agree with the plaintiffs in their analysis of the Clean Water Act, does the government agree that under Taylor that the virtual representation issue is basically off the table, that they would be entitled to go forward? Well, we believe that if you believe S.D. Warren changed the game and come back in, that collateral estoppel should not be a bar. Collateral estoppel or virtual representation? Well, either. I mean, they need S.D. Warren to have changed the game. Oh, you're right. No, no, no, absolutely. So if S.D. Warren changed the game such that it's reopened the question that was answered and gone back. Yeah, I probably misstated this. What I mean to say is if S.D. Warren changed the game, does the government agree that the new plaintiffs, that the trial court included by virtue of the virtual representation document, would be entitled to move forward because they were not previously in the case and virtual representation is, in effect, no longer a valid basis for moving forward? I think that, actually, if S.D. Warren did change the game, all of them should be able to come forward because there would have been an intervening change of law from a higher authority, so it wouldn't bar any of the plaintiffs. Okay. If the Court has other questions, I'm happy to take them or I could explain some more. We never object to a wise counsel who can conclude that they have stated their piece well. Then I would rest on our briefs and just respectfully ask that the Court affirm the district court. Thank you very much, and we'll return to the exciting testimony and argument from our learned counsel here. Thank you very much, Your Honor. I'd just like to make three brief points. First of all, Miller states very clearly that this Court's decision cannot create an inconsistency between the decisions of this Court and the reasoning of the Supreme Court. So the reasoning of the Supreme Court in S.D. Warren is very relevant to whether or not there's an irreconcilable difference. Secondly, S.D. Warren looks at the characteristics of the release and not the source, whether or not something is a flowing or an issuing out. And livestock pollution, pollution from livestock raising, falls very comfortably within the ordinary meaning because you have sediment flowing into streams when cows trample down stream banks. You have manure flowing off of stream banks into streams when there's rainfall. And when you have, as Dombek pointed out, cows entering into streams and, as Dombek says, introducing their waste directly into the streams, that is a flowing or issuing out of pollution, even though a cow has been artificially determined to be a nonpoint source, that is still a point source. Are you going to argue that a cow is a point source? No, Your Honor, because Dombek held that, and there's been no supervening authority with that regard. But there's still a flowing or issuing out of pollution when that cow is doing its business, in the river. And this is within the ordinary and natural meaning of a term discharge, of flowing or issuing out, clearly covers the kind of pollution that enters water from livestock grazing. And third, with respect to the new plaintiffs, this Court has an obligation to correct the error of the district court in dismissing the three new parties. Even if it holds that stare decisis controls here, it still must reverse the district court's determination that these parties, the three new parties, were barred by virtual representation because of the lack of an error. And even then, if it affirms the balance of the case, must overturn that, must reverse that particular aspect. Thank you. Thank you to both counsel for a fine argument. The case just heard is submitted.
judges: Thompson, Tashima, Smith